NicholsoN, C. J-,
delivered the opinion of the Court.
In 1854, Elizabeth R. Sandford intermarried with George W. Thompson. At the time of the marriage, she was the owner, in her own right, of a valuable tract of land of 325 acres, situated in Cannon County, together with slaves and other personal property. She was a widow, with one child, Bettie V-, the complainant. George W. Thompson had but little property, if any, besides two or three horses. In November, 1855, Thompson and his wife sold and conveyed the land for $14,-725, to M. R. Rushing. The proceeds of the land were *73 received by Thompson, who invested them in othér lands and in personal property. In 1859 Mrs. Thompson died, leaving complainant her only heir; and in 1860 Thompson died, leaving no children. Defendant, John W. Wee-den, administered on his estate, and entered upon its administration; but finding that the personal assets were insufficient to pay the debts, he filed an. insolvent bill for the sale and distribution of the proceeds of the lands amongst the creditors, who are thereby made defendants to the bill of complainant. Bettie V., by her nest friend, files her bill, claiming that her mother, Elizabeth R.
Thompson, died the owner, by resulting trust, of all the real and personal estate purchased with the proceeds of the land sold to Rushing; and that as the only heir of the said Elizabeth R., she is entitled, by descent, to all of said property. The heirs of Thompson were originally defendants, but have acquiesced in the decision of the Chancellor against them; so that the contest here is made alone between Bettie V. and the administrator and creditors of Thompson.
The allegations in the bill by which the contest is raised, are, that prior to his marriage with complainant’s mother, Thompson formed the scheme of first marrying her, and afterward procuring the title to her lands by inducing her, by false promises, to join with him in a sale of the land owned by her, and then vesting the proceeds of the sale in other lands and personal property, and having the titles made in his own name. It is further alleged that this fraudulent scheme was consummated by falsely promising her mother that if she would consent to a ■ sale of her land, he would- vest the pro *74 ceeds In other lands and take the title in her name. And that her mother, confiding in this promise, did join him in the sale to Lushing, but that he fraudulently vested the proceeds in other property, real and personal, and took the titles to himself. It is further alleged, that she was addicted to the excessive use of opium, and that when under its influence she was easily influenced by her husband.
The administrator answers, and denies, on information, the material allegations of the bill, thus making up the issue.
There can be but little controversy at this day, especially in our State, as to the .questions of law which control cases of this kind. The real contest in this, as in most similar cases, is as to the facts. We will first state the principles of law applicable to the case, and then examine the facts, to ascertain whether they bring the case within the principles of law laid down.
1. The ordinary and simple form of resulting trust, is, when one person, having the funds of another in his possession, without any agreement with the owner of the funds, vests them in property, and takes the title to himself. The law in such cases implies a trust, and holds that the trustee has the naked, legal title, whilst the real ownership is in the person whose money paid for the property. Fonbl. Eq., 401, top p., and note; 1 Lead. Cas. Eq., 200, 203, and authorities cited; Hill on Trust., 141, top p.
2. Another species of resulting trust is, when a trustee of any kind, has in his possession, trust funds, and agrees with the cestui que trust to invest them in real *75 estate generally. If be does vest them in real estate, taking the title to himself, the owner of the funds has a resulting trust, which he may enforce,- either by electing to take the land, or he may enforce his lien against the land for the money. 1 Lead. Cas. Eq., 195, 204, and authorities cited; Turner v. Pettigrew, 6 Hum., 438; Fonbl. Eq., 423, note; Hill on Trust., 142.
3. There is another species of resulting trust, where funds are placed in the hands of a trustee, under an agreement to be vested in specific property. In this case, if the specific property is purchased, and the title taken in the name of the trustee, the law raises a presumption that the funds of the eestui que trust were used in the purchase; and upon this presumption a resulting trust is' raised, which may be enforced at. the election of the ces-tui que trust, either by having the title divested out of the trustee, and vested in the cestui que trust, or by enforcing the specific lien against the land. 2 Lead. Cas. Eq., pt. 1, p. 560, 561; 1 Fonbl. Eq., 424, 5, notes; 1 Brown’s Ch. R., 507; Adams’ Eq., 116, top p.
In the first species of resulting trust, it has been held, but upon -reasoning not very satisfactory, that the owner of the fund can only enforce the trust by recovering the property itself. In the other two species, the cestui que trust has an election to take the property, or to follow the money by enforcing the lien on the property. 1 Lead. Cas. Eq., 203, and authorities cited. [Ed. of 1859, p. 276.]
It is well settled, that neither of these kinds of resulting trusts is embraced by the statute of frauds, 29 Charles 2, c. 3, and therefore there is no controversy -as to the admissibility of parol proof for their establishment *76 and enforcement. Different Judges have employed different language in declaring the character and weight of the proof, which is necessary and sufficient to set up a resulting trust. The result of all the attempts to define the rule as to the amount of parol proof necessary in such cases, is, that the conscience of the Court should be fully satisfied that the facts relied on to raise the trust are true, and sufficient to create the trust. Hence, in the first species of resulting trust, the proof, whether parol or written, must be such that the Court is fully satisfied that the funds of the cestui qui trust, and not the funds of the holder of the legal title, was used in the purchase of the property. So, also, as to the second species, the proof must fully satisfy the Court that there was a definite agreement between the cestui que trust and the trustee as to the investment of the funds, and the like proof as to the use of the funds of the cestui que trust in the investment. The rule does not require the proof to 'show that the identical coin and bank bills received from the cestui que trust were used in the investment, but that the funds used in making the investment were, in fact, the funds of the cestui que trust.
In the third class of resulting trusts, the rule as to amount and character of proof necessary to establish the agreement for the investment of the funds in the specific property, is the same as in the other two classes. It must fully satisfy the Court as to the definite character of the agreement. But in such case, if the specific property agreed to be purchased is actually purchased, the law presumes that the trustee discharged his trust faithfully, and used' the funds of his cestui que trust as agreed; *77 and be will not afterward be permitted to claim the property as his own, by showing that he violated his trust, and used his own money. Fonbl. Eq., 424, 5, notes; Adams’ Eq., 116.
It was at one time much controverted, whether the admissions or declarations of the holder of the legal title could be proved after • his death, to set up a resulting trust against his heirs, representatives or creditors; but in this country, at least, it is now the ruling doctrine, that such proof is competent against all persons claiming under such deceased trustee, except bona fide purchasers for valuable consideration, without notice. 1 Lead. Cas. Eq., 200, 201; McCammon v. Pettit, 3 Sneed, 242; Adams’ Eq., 112; Hill on Trust., 149.
To determine whether the complainant is entitled to the relief prayed for, we must next turn to the proof, and ascertain whether she has shown fully and satisfactorily, that her case falls within either of the classes of resulting trusts defined.
It is proved by St. Johns, that he was on terms of intimacy with Thompson, that, after the marriage and before the sale of the land to Rushing, Thompson wanted witness to see complainant’s grandfather and get hold of the original marriage contract between complainant’s mother and her former husband. [It was through this contract that she obtained the property.] He, Thompson, said the grandfather had refused to give the paper up to him.. After the land was sold to Rushing, Thompson told witness that he was too sharp to let matters stand as they were when they married. He said he had managed to get the property into his *78 own hands, for the reason that if his wife died the property would go to the complainant. He also said his wife would kill herself taking laudanum if she did not quit it, and he intended to do right by complainant when she got married — he intended to give her a negro, etc.
He spoke at another time of a difficulty between his wife and himself — that she was constantly annoying him about the title to the property he had bought with her means, and said he had promised her he would have the title made to her, but would not do it to please the Wharton family (his wife’s family.)
Here is direct proof of an effort to get possession of the original title paper of the land, and a clear admission after the land was sold that he managed to get the property into his own hands by the sale; and the manner in which he so managed is clearly manifested when he said afterward that he had promised to make her a title to the property which he had purchased with her means. Here is an admission both of the agreement and of the application of the trust funds.
Weeden proves that Thompson promised his wife that he would have the proceeds of the land sold to Hushing invested in other lands, and have the title made to her. This was the arrangement, in the presence of witnesses, before she agreed to have the land sold. She mentioned the town property in Woodbury, and other specified lands, to be paid for out Of the proceeds of the sale to Hushing. She was unwilling to sell to Hushing until this promise was made by Thompson. Witness heard a conversation between Mr. and Mrs. Thompson *79 whilst they were separated, and whilst she had a bill pending for a divorce. In that conversation he admit? ted that he had promised to have the title of the property made to her, and he would still do so, if that would reconcile her. She thereupon dismissed her divorce suit. She claimed the town property and the other lands purchased as having been paid for with, her money; and he admitted it all.
' This witness was present when the agreement for the sale of the land to Rushing and the investment in specific lands was made. He proves that she was unwilling to sell until the promise was made, and that afterward Thompson admitted that he had made the promise, and had paid for the lands, specified in the agreement, with her money.
Webb proves that before and about the time of Thompson’s marriage, he frequently heard him say that if he married he intended to get the title of the property in his own name; and, after the marriage and after the sale, he said he had done what he intended. He said he was too sharp to have a marriage contract — he intended, to' have the property in his own hands.
Mrs. Miller heard Thompson often promise his wife to give her the worth of the land sold to Rushing in other property. She proves that Mrs. Thompson toot a. great quantity of opium and laudanum about the time the land was sold, and when under the influence of either, she could be easily influenced.
This, proof, taken all together, leaves no room for doubt that Thompson entered into the marriage with his wife for the purpose of -procuring her property;, and with a *80 fixed design so to manage, as to become the absolute owner of its proceeds; and that he did induce her, by false promises, to consent to sell her land, with a distinct agreement that the proceeds should be vested for her benefit in the lands which he afterwards bought; nor is there any doubt, not only from his pecuniary condition, but from his frequent admissions, that the property bought was paid for with her means.
Nor do we think the proof made by defendant in any material degree weakens the force of complainant’s proof. We attach but little weight to the witness, Harris. He shows himself too willing and too swift a witness to command much respect. His eagerness to defeat the claim of complainant is shown by his own declarations, as well as by his relinquishment of his interest, in order to become a witness. Nor do we think the fact that Mrs. Thompson failed in her bill for divorce, to set up a claim to the property by way of resulting trust, is such a circumstance as can be relied on, either by way of estoppel or as evidence that she had no such claim. Her object in her bill was to be released from a cruel and brutal husband; and by securing this object, she was, no doubt, advised by her counsel, that she would be restored to her property. In her bill she sets up distinctly her claim to the whole property, and her first prayer is that the Court will restore it to her. It is altogether probable that she was ignorant of her right to set up a resulting trust. Under such circumstances, we are fully satisfied, notwithstanding the proof of Harris and the allegations in her bill for divorce, that complainant has established such a state of facts, as, under the second and third clauses of *81 trusts defined, entitles her to the relief prayed for; unless the. creditors of Thompson have a superior equity to which her’s must be postponed.
This is not - an open question in this State. It was held, in Thomas v. Walker, 6 Hum., 93, that the equitable interest of a person, who has a resulting trust, is not affected by judgments of creditors against the holder of the legal title ; in Turner v. Pettigrew, 6 Hum., 438, that a resulting trust will prevail against- creditors who claim the property by conveyance, in trust for their security, by the holder of the legal title. And in two cases decided at the recent term at Knoxville, Gass v. Gass,[1] and Click v. Click,[2] it was held that it will prevail against an' attaching creditor or against a purchaser at execution sale. The only party who can successfully contest this equity is a bona fide purchaser 'for valuable consideration without notice.
It follows that complainant is entitled to the relief prayed for. The Chancellor so decreed, and we affirm his decree.

 1 Heis., 613.

 Ib., 607.